Tucker, P.
There being, in these four cases, only one or two minor points of difference, I shall consider them, as they have been argued, all together.
The first question is common to them all; and after having carefully considered it, I am satisfied that the case of Waller V. Long is decisive upon the point. I shall, therefore,' dismiss it without further remark.
The provision, then, exacting interest in default of punctual payment, being in the nature of a penalty, and to be disregarded accordingly, it is clear there is error somewhere in those proceedings. It seems to have been somewhat questioned, whether the error was in the entry of the judgement, and so proper to be amended upon motion; or in the *315 execution, and so to be corrected upon a motion to quash. I do not think it important; for though the notice is to amend and not to quash, yet it gave sufficient information of the plaintiff’s object, to justify either motion. I am, moreover, of opinion, that the proper motion was to amend. For it appears, that when this motion was made, the complete record, made up from the minutes, was erroneous in the point in question : with this the execution corresponded; and, of course, the execution could not be quashed, until the record itself was corrected. So that, although the judgement of the court upon the minutes, was correct, the record, of the judgement, as entered at large, which it was sought to amend, was erroneous, and was the proper object of correction.
Was this error amendable upon motion ? or was it such an error in law, as can be only amended by writ of error from a superiour tribunal ? There seems to have been some difficulty, in drawing the line between clerical errors, and errors in law or in the judgement of the court. I am not, at this time, prepared to say that it can or cannot be distinctly defined a priori. But this, at least, may safely be affirmed, that from the english statute of 14 Ed. 3. stat. 1. ch. 6. which is said to have been the first statute of amendment, down to our statute of 1819, 1 Rev. Code, ch. 128. $ 108. p. 512. the legislative will has leaned to the amendment of mere misprisions, without the necessity of encountering the expense and trouble of a writ of error. Such is obviously the policy evinced in this last statute. The principles of the common law inhibited the allowance of a writ of error in the same court in which the judgement was rendered, for any error in the judgement of the court itself; for, if that were allowed, it would be infinite. But where the error was in the process, or a misprision of the clerk, it might be corrected by the same court, without involving inconsistency, or leading to endless contests about what the record ought to be. In this spirit, the statute of 1819, above quoted, not confining itself to clerical errors, or errors in the process, or to the *316 mere ministerial acts of the officer of the court, extends to the very judgement of the court itself: it provides, that “ where, in the record of tile judgement, there shall be any mistake &tc. and among the records of the proceedings; there shall be any verdict, bond, bill, note or other writing ^le kke nature or kind, whereby such judgement may be safely amended, the court in which such judgement shall be rendered, shall amend it according to the very right of the case.” Here, it is clearly manifested, that though the error be in the judgement itself, if there appears to have been a mistake in it, it shall be amended. Thus, if a verdict be rendered for £ 100. and the judgement on it entered for 100 dollars, there is an obvious mistake, which may be corrected under the statute of 1819, by the verdict, to which it may be fairly presumed the court designed to conform. This statute, I think, relieves us from much of the former difficulty in relation to the distinction between clerical errors and errors in the judgement of the court. For, if it appears, that there is a mere mistake, miscalculation or misrecital, the statute is imperative, that the correction shall be made. But if, upon the inspection of the proceeding, the matter complained of appears to have proceeded from error in the opinion of the court, and not from mere mistake, the case is not within the statute: for the mistake, whether of the clerk or of the judge, to which the statute refers, is not an error of judgement, but an error in which the judgement has no participation.
Since this statute, then, I conceive, there are two classes of errors amendable by the same court in which the judgement is rendered : 1. all such errors as were deemed clerical, or were amendable before the act; and 2. all such mistakes even in the judgement of the court, as can be amended by any verdict, bond, note, or bill &e. in the record.
The wisdom of the statute, and the policy of construing it according to its spirit, is very obvious, when we look to the consequence of permitting mere mistakes to be amendable only by writ of error from an appellate tribunal. The *317 expense of the proceeding, the tying up a just demand for a long time, for an error which the inferiour court would itself acknowledge the instant it was pointed out, the accumulation of appeals in this court, and the consequent increase of the evil of delay, all conspire to sustain the propriety of leaving the inferiour courts to correct whatever is merely referable to mistake, and of confining the powers of the appellate courts to those errors which cannot properly be revised by the tribunal which has committed them, because it had deliberately committed them. I am happy, therefore, to find that the three judges who sat in Commonwealth v. Winstons, 5 Rand. 546. concur in the explicit admission, that the statute of 1819 comprehends the mistakes of the court as well as those committed by the clerk.
Was there, in the cases before us, a mere clerical mistake? or was there an error in the judgement of the court?
First, as to the cases in the county court. One of these is the case of an office judgement, confirmed for specialty and costs. In the other two, the entry on the minute book is, “ Plea waived and judgement for specialty and costs.” All of these are strictly correct, and justified the clerk when he should extend the minutes, and make up the complete record from them, in entering the judgement for the penalty in the respective specialties, to be discharged by the payment of the sum due with interest, not from the 20th December 1817, the date of the bonds, but from the respective times of payment. Up to the judgement then, inclusive, there was no error. The error is since the judgement, in its extension by the clerk in the complete record. Now this extension was strictly a clerical act, and was therefore amendable even independent of the statute of 1819.
Then, as to the judgement of the circuit court. In that case, there was an office judgement entered erroneously for interest from the 20th December 1817, instead of the 1st March 1820. Now, I take it, this was clearly amendable by the circuit court, under another provision of the statute, 1 Rev. Code, ch. 128. § 77. that “ the court shall have *318 control over all proceedings in the office during the pre- ,. . ° . , ,. ceding vacation, may correct any' mistakes or errors which may have happened therein, and may for good cause shewn, set aside any of the rules or proceedings, and make such order concerning the same as may be just and right.” Why? because these are clerical proceedings merely. The office judgement, therefore, though entered by the clerk, might have been corrected by the court. It was not however corrected; and not being set aside at the succeeding term, the clerk seems to have proceeded according to the provisions of the statute of 1792 (1 Old Rev. Code, ch. 66. § 42. Pleasants’s edi. p. 80.) and to have entered the judgement at large, either actually on the last day of the term, or as of the last day of the term, which, under that statute, would have sufficed ; Digges's ex'or v. Dunn's ex'or, 1 Munf. 56. I do not think it clearly appears, whether it was actually entered among the orders signed by the judge or not. Suppose it was, yet the judgement so entered, was not the act of the court; it was a ministerial act of the clerk, in obedience to the express command of a statute no longer in force. It may be doubted how far the court, even under that statute, could have entered a judgement, variant in a single tittle, from the office judgement, unless that judgement was either set aside, or a motion made to correct it. But under the act-of 1819, 1 Rev. Code, ch. 128. <§> 79. the matter is still more clear. That directs, that office judgements not set aside during the term, shall be “ considered as final judgements of the last day of the term.” It does not pursue the statute of 1792, in requiring them to be entered as of the last day of the term. Therefore, they do not now pass at all under the supervision of the court, nor are they entered upon the record. Hence, the entry of the judgement is still the mere act of the clerk, and as such amendable. For the law considers the erroneous entry of the office judgement, as a mere misprision of his, and authorizes the court to amend it. Now, if it was his misprision originally, we have the authority of judge Cabell, in his very *319 elaborate and most able opinion in Commonwealth v. Winstons, for saying that what was a mere misprision of the clerk in its origin, does not cease to be so, even where the entry has been read in court and signed by the judge; much less where he has nothing to do with it.
Upon the whole, therefore, I am of opinion, that the error in all these cases was amendable.
The other questions discussed in this case, seem to me to present no difficulty. The record of the judgements in all the cases, being erroneous, and the executions corresponding therewith, the former was very properly made the point of attack. But it was a necessary consequence of the correction of the record of the judgements, that the executions should be quashed, whatever may have been the proceedings under them. Nor was there any bar to the motion arising from the statute of limitations of writs of error and supersedeas, for that act if it applies to writs of error coram nobis, or to motions of the nature of them, was neither pleaded nor relied on in the court below. If it had been, the party might have brought himself within some one of the exceptions.
As to a writ of restitution, which this court is asked to award, as being part of the judgement which the courts below ought to have given, I am of opinion, that nothing appears in this case, to warrant such a judgement below. In those cases in which a levy appears to have been made, there is no evidence that the money was paid to the plaintiff. The sheriff does not so return. It seems to me, therefore, to be one of those cases in which the writ of restitution after reversal can only be awarded upon the party’s suing out his scire facias, or perhaps upon a notice specially stating that a motion for restitution would he made. It is said in Tidd’s Practice, p. 1072. that when the plaintiff has execution, and the money is levied and paid, and the judgement is reversed, the party shall have restitution without a scire facias; because it appears on the record, that the money is paid, and there is a certainty of what was lost; other *320 wise, where it was levied, but not paid, for then there must , . . , . be a scire jacias, suggesting the matter ol lact, viz. the sum levied &c. This is the language of the case in 2 Salk. 588. See also 2 Wms. Saund. 101. y. 6 Com. Dig. Plead. 3. B. 20. p. 466. I understand it as meaning, that the rnoney must ^laVe ^eet) Pa’^ 0Ver t0 ^le P^alnt'S’5 f°r ^ >s yet in the hands of the sheriff, it seems not reasonable that there should be judgement for the amount against the plaintiff. He neither has the money nor can he recover it; for his remedies against the sheriff [in England] are either by rule, by action of debt on the return, or by action of assumpsit for money had and received, neither of which could be pursued by him, I presume, after his judgement is reversed, or his execution quashed for irregularity. On the other hand, there could be no difficulty on the part of the defendant. He might compel restitution from the sheriff (if he had not paid over the money) either by scire facias or by rule : for he is certainly entitled to it, and the court would compel the officer, if the money was yet in his hands, to pay it to the proper person, or if it had been paid into court, according to the exigency of the execution, it would be paid tp the defendant'by its order. I am, therefore, of opinion, that there should be no award of restitution by this court, but the party may proceed below by rule against the sheriff, or the plaintiff, as the case may be, to recover back the excess he may have been compelled to pay on the executions.
Carr, «7. Agreeing with the general propositions of the president, and .the conclusions to which he comes in the main, I should not have said any thing in the case, but to prevent the inference (which might be drawn from my silence) that I consider the case of Commonwealth v. Winstons as overruling Bent v. Patten. I am pretty sure, that such was not the intention of my brethren, and know it was not my own. We considered the cases distinguishable; as I also think Bent v. Patten distinguishable from the cases *321 now before us; and without saying that I should have gone with the majority in that case, I mean simply to declare that I do not consider myself as overruling it. I think the errors in the cases before us clearly clerical, and properly amendable by the same court in which the judgements were entered. I consider the executions and all proceedings on them properly quashed, after correcting the judgements. But I do not think this court can award restitution, as there is no return showing that the money has been paid to the plaintiffs.